NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**LEAH K. BOLSTAD, OSB #052039**
Assistant United States Attorney
Leah.Bolstad@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:21-cr-00413-HZ-02 |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **EDWARD CHARLES GREEN,** | |
| **Defendant.** | |

From April 2020 through September 2021, defendant straw purchased sixty-four (64) firearms. He had none of these firearms when arrested. Instead, many of the firearms he purchased ended up in the very wrong hands of violent criminals, some from his own Portland gang set, the Unthank Park Hustlers. In a snapshot of how dangerous this straw purchase conduct can be, just one of the 64 firearms that defendant bought has been forensically linked to seventeen (17) shootings in the Portland area, including two homicides. Many of the firearms he purchased have yet to be recovered. Because of the incredible danger posed by his protracted offense conduct and his leadership role in encouraging and inciting gang violence, this Court

should impose a guideline sentence of 37 months' imprisonment followed by three years of supervised release.

I.      **The Offense Conduct**

From April 2020 through September 2021, defendant purchased sixty-four (64) firearms. Of those, he purchased forty-six (46) from FLFD No. 1, a Federal Firearms Licensee (FFL) in Gresham, Oregon. Overall, he spent $15,853.00 on these firearm purchases from FLFD No. 1. A total of twelve (12) firearms purchased by defendants have been recovered by law enforcement. PSR ¶ 14.[1]

For Count 23, on August 13, 2020, defendant paid $700 to purchase two .357 caliber Glock model 31 pistols (SN TWN171 and SN MPV594) from FLFD No. 1. PSR ¶ 15. In filling out the Form 4473, defendant answered "Yes" to question 11.a - "Are you the actual transferee/buyer of the firearm(s) listed on this form? Warning: you are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you."[2] On August 30, 2020, a shooting occurred at SE 130th and SE Stark. PSR ¶ 16. PPB officers approached a shot-up vehicle in the Portland Adventist parking lot and recovered three firearms inside, including the

---

[1] According to the criminal complaint, law enforcement has recovered 12 firearms, including a .40 caliber Glock 23 (SN EYW721) recovered from a Hoover Criminal Gang member T.K. during an August 30, 2021 traffic stop.

[2] The form 4473 provides another warning on page 2 specifically addressed to this question 11.a: "I understand that answering "yes" to question 11.a if I am not the actual transferee/buyer is a crime punishable as a felony under Federal law, and may also violate State and/or local law.

**Government's Sentencing Memorandum**                                                                                      Page 2

.357 caliber Glock model 31 (SN TWN171) purchased by defendant on August 13, 2020.[3] It was recovered from a male passenger C.W., a known Unthank Park Hustler and associate of defendant. PSR ¶ 16. Neither defendant was present when these firearms were recovered.

For Count 26, on December 8, 2020, defendant paid $725 in cash to purchase two firearms from FLFD No. 1 – (1) a .45 caliber Glock 21 pistol (SN NTD502), and (2) a .40 caliber Glock 23 pistol (SN ZAC474). PSR ¶ 18. After the background check passed, the FLFD No. 1 transferred the firearms to defendant on December 12, 2020. In filling out the Form 4473, defendant answered "Yes" to question 11.a - "Are you the actual transferee/buyer of the firearm(s) listed on this form? Warning: you are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you."[4] On July 9, 2021, the .45 caliber Glock pistol (SN NTD502) was recovered by police during a search warrant execution at the residence of I.H., a known Unthank Park Hustler and associate of defendant. PSR ¶ 20. This firearm has been forensically linked to seventeen (17) shootings in the Portland Metro area in a 13-month period (June 2021-July 2022), including two homicides. *Id*.

For both Counts 23 and 26, defendant knew he was making a false statement when he answered "Yes" to Question 11.a because he was transferring firearms to others, including prohibited persons. When arrested for these straw purchase crimes in October 2021, agents

---

[3] The second of the three firearms was purchased by defendant on May 18, 2020 (Count 18). The third of three firearms recovered was purchased by co-defendant Thomas Green III on May 6, 2020 (Count 1).

[4] See footnote 1.

**Government's Sentencing Memorandum**                                                                 Page 3

searched defendant's residence and found none of the 64 firearms. They asked him where the firearms were, and defendant indicated he did not know, and he did not have them. PSR ¶ 25. He never reported a single firearm stolen. The false statements on the Form 4473 were material, as explicitly described in the form 4473 – the FFL may not transfer a firearm to a buyer who is acquiring the firearm for another person. In other words, the statement is material because without a "Yes" answer, the FFL will not transfer the firearm.

Defendant engaged in firearms trafficking, and by plea he stipulated to the associated 4-level increase. Factually, defendant purchased 64 firearms but possessed none of them at his arrest, and never reported or suggested that any had been stolen. Instead, some have been recovered in possession of others. Thus, defendant transferred or disposed of two or more firearms to other individuals. Additionally, based on the investigation, it is apparent that defendant knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual whose possession or receipt of the firearm would be unlawful; or who intended to use or dispose of the firearm unlawfully. U.S.S.G. § 2K2.1, Application Note 13. These firearms were transferred to, and in some instances recovered from, Unthank Park Hustler gang members and associates who were known to be felons convicted of violent crimes. As UPH members, they are expected to engage and do engage in shootings of rival gang members, i.e., use firearms unlawfully.

Defendants are self-admitted UPH members who frequently posted rap videos on social media that encouraged and praised gang shootings of rivals. PSR ¶¶ 21, 56. In one video posted in December 2020 – Str8 2 It (screenshot below) – the footage shows defendants wearing UPH

colors red and green, holding firearms, in their home on SW Lillyben residence, with other armed UPH members like C.W. and I.H.[5]



The lyrics are about being a gang member and committing shootings – "*catching bodies like it's a hobby.*" Co-defendant Thomas Green III raps, "*Four gang full of shooters and I love them to death,*" as he points to the armed UPH members like defendant Edward Green flaunting bandanas and firearms towards the camera. Investigators know that "four gang" is a reference to the Unthank Park Hustlers.

---

[5] These are the same C.W. and I.H. from whom law enforcement seized firearms purchased by defendant Edward Green, referenced in the summary of Counts 23 and 26 above. GREEN_0001402-03.

**Government's Sentencing Memorandum**                                                                 **Page 5**



In another rap video entitled "Bang Bang" (see above) and posted by the defendants as one of their "Official Videos" in 2019, multiple UPH members, including defendant Edward Green, are shown holding and pointing firearms. Lyrics include "*plotting a murder we itchin for bodies,*" and "*bullets be flippin when I got the stick,*" and "*accurate with these weapons I aint missin with the semi.*" GREEN_0001404. Such videos encourage and praise gun violence, taunt rivals, and tend to breed more gun violence.

On May 12, 2021, an unknown assailant shot twelve rounds into the Green brothers' Lillyben residence in Gresham, Oregon, the same residence featured in their December 2020 posted rap video. GREEN_0000271 (Complaint). Nine days later, a shootout occurred at this residence during which a drive-by shooter shot fourteen (14) rounds into the house. After the

driver fled the scene, an unidentified occupant inside the home fired approximately thirty (30) rounds through the front walls, window, and door, spraying the street and neighboring homes with bullets. GREEN_0000271(Complaint). A subsequent search of the home revealed nine empty gun cases, receipts for gun purchased made by the defendants, and hundreds of spent cartridge casings.

II.     **The Charges & Guilty Plea**

On October 21, 2021, a federal grand jury returned an indictment charging defendant and his twin brother with forty-one (41) counts of Straw Purchasing Firearms, in violation of 18 U.S.C. § 922(a)(6). ECF No. 1. Some of these counts involved the purchase of multiple firearms at one time. For example, in Count 35, defendant purchased seven firearms at one time. On June 23, 2023, defendant pled guilty to Counts 23 and 26 pursuant to a plea agreement. ECF No. 109.

III.    **Guideline Computations**

The Probation Office prepared a presentence report, and the government agrees with the calculations therein. By plea, the defendant stipulated to a base offense level 14 and a 4-level increase for "trafficking of firearms" pursuant to 2K2.1(b)(5). Plea ¶ 8; PSR ¶¶ 31, 33. There is only one disputed guideline issue, and that pertains to the number of firearms involved in the offense. PSR ¶ 32. The government agrees with the PSR that a 6-level increase applies because the offense involved at least 25 but fewer than 99 firearms. PSR ¶ 32; U.S.S.G. § 2K2.1(b)(1).

Defendant contends that even though he purchased 64 firearms for which he cannot account, the number of firearms "involved in the offense" is less than 25 because law enforcement has only recovered eleven. Thus, under defendant's logic, this Court should only count as "involved" in the offense those firearms that law enforcement has managed to recover.

Defendant cites no legal authority for this position. The straw purchase crime itself does not require firearm recovery as an element. 18 U.S.C. § 922(a)(6). Moreover, application note 5 directs courts to include, when counting the number of firearms involved in the offense, "any firearm that a defendant obtained or attempted to obtain by making a false statement to a licensed dealer." U.S.S.G. § 2K2.1(b)(1), Application Note 5. Recovery is not required.

Defendant agrees that to determine the number of firearms "involved in the offense," a court should rely upon the relevant conduct provisions in the guidelines. PSR page 23 (defense letter). All 64 firearms straw-purchased by defendant qualify as "involved in the offense," under the relevant conduct principles in § 1B1.3. Relevant conduct includes all acts that are "part of the same course of conduct or common scheme or plan as the offense of conviction," where those separately charged acts would require grouping of multiple counts if convicted. U.S.S.G. § 1B1.3(a)(2). Here, defendant is charged across 32 counts with repeatedly making the same false statement during purchases of firearms over the course of 17 months. His two counts of conviction are grouped for sentencing, pursuant to §3D1.2, without any objection. PSR ¶ 30. The other charged counts would group as well, if convicted. As such, each firearm alleged in those straw purchase counts qualifies as being "involved in the offense." U.S.S.G. §§ 1B1.3(a)(2), 2K2.1(b)(1); *see e.g.* U.S.S.G. § 1B1.3, Application Note 5(A) (combining drug quantities across three separately charged distributions to determine the offense level even though defendant pled guilty to only one count).

/ / /

/ / /

/ / /

At TOL 21, criminal history category I, defendant's advisory guideline range is 37-46 months.[6] Consistent with the plea agreement, the government recommends a sentence of 37 months' imprisonment, followed by a three-year term of supervised release. Probation also recommends a 37-month sentence. PSR Sentencing Recommendation at 1.

### IV.     Government's Recommended Sentence

The government recommends as a reasonable sentence under the 3553(a) factors a sentence of 37 months' imprisonment. A 37-month sentence promotes respect for the law, acts as a deterrent, and provides just punishment for the offense. Defendant bought firearms for others, and those firearms have been used in dozens of gang-related shootings in the Portland area. He agrees he engaged in the "trafficking" of firearms. His conduct endangered countless lives, and he knew it. The 37-month sentence recommended by the government aims to deter similar conduct from those willing to buy guns intended to be used in this ongoing and devastating gang violence.

Defendant's below-guideline sentencing recommendation is not warranted in this case. This is because these advisory guidelines, as they currently stand, do not account for the terrible harm resulting from the offense conduct. There is no increase in base offense level for straw purchased firearms that were used to commit murder. Nor is there an increase for a straw purchased firearm that was used to commit two murders and multiple shootings. There is no specific offense characteristic that accounts for the reasonably foreseeable consequences of the

---

[6] PSR paragraph 77 is inaccurate in stating the TOL is 23 with a range of 46-57 months. The guidelines are correctly calculated in paragraphs 31-41, and the correct TOL 21 and CHC I is noted on the first page.

offense conduct. Instead, these guidelines start straw purchasers at BOL 14, then count firearms and punish "trafficking" with a 4-level increase. Thus, it is the government's position that a sentence any lower than these arguably inadequate guidelines would fail to fairly punish the offense and the natural consequences of the offense conduct. This defendant bought 64 firearms that he transferred to others. He knew these individuals were either prohibited from purchasing firearms themselves or they were going to use these firearms unlawfully. Indeed, by his own rap videos, he encouraged gun violence and shooting at rivals. Therefore, a guideline sentence is sufficient, but it is not greater than necessary to punish this conduct.

### V.     Conclusion

Based on the foregoing, the government recommends that this Court impose a sentence of 37 months' imprisonment followed by a three-year term of supervised release, subject to the mandatory, standard, and special conditions proposed by the Probation Office, and a $100 statutory fee assessment.

Dated: September 13, 2023                          Respectfully submitted,

                                                                          NATALIE K. WIGHT
                                                                          United States Attorney

                                                                          /s/ Leah K. Bolstad
                                                                          LEAH K. BOLSTAD, OSB #052039
                                                                          Assistant United States Attorney