Mark J. Kimbrell, OSB 143607
Levine & McHenry LLC
1050 SW Sixth Avenue, Suite 1414
Portland, Oregon 97204
503-546-3927
email: mark@levinemchenry.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br>    vs.<br><br>EDWARD CHARLES GREEN,<br><br>            Defendant. | No.  3:21CR00413- HZ-2<br><br>DEFENDANT'S SENTENCING MEMORANDUM |

On September 20, 2023, defendant Edward Green will appear for sentencing, having pleaded guilty on June 23, 2023, to two counts of False Statement During Purchase of a Firearm, 18 U.S.C. § 922(a)(6).  Mr. Green has been in federal custody since June 13, 2023.

For the reasons set forth below and in the accompanying confidential supplement to the presentence investigation report (PSR), and for reasons that will be presented at the sentencing hearing, the Court should sentence Mr. Green to 21 months prison with a 3-year term of post-prison supervision.

## BACKGROUND

**I.      The criminal conduct**

Mr. Green's criminal conduct is documented in the plea agreement (ECF 109) and presentence investigation report. As stated in the plea agreement, 18 U.S.C. § 922(a)(6) requires that the defendant make a materially false statement, that he knew to be false, in connection with acquiring a firearm from a licensed firearm dealer. ECF 109 ¶ 6.

*Count 23*:

On August 13, 2020, Mr. Green purchased two firearms from a licensed firearms dealer, and, in doing so, answered "Yes" to the question of whether he was the actual "transferee/buyer" of the firearms. On August 30, 2020, police recovered one of those firearms from individuals in a shot-up vehicle in the Portland Adventist parking lot. *Id.* at ¶ 6 (plea agreement). According to discovery received from the government, C.W., who was being treated in the hospital for a gunshot wound, had been driving the vehicle. Green 0000726-0000767.[1]  C.W. is an Unthank Park Hustler and associate of Mr. Green. PSR ¶ 16. Mr. Green was not present at the scene. ECF 109 (plea agreement) at ¶ 6.

---

[1]      Counsel lists the Bates range when citing to the government's discovery throughout this memorandum.

*Count 26:*

On December 8, 2020, Mr. Green purchased two firearms from a licensed firearms dealer, and, in doing so, answered "Yes" to the question of whether he was the actual "transferee/buyer" of the firearms. The dealer transferred those firearms to Mr. Green on December 12, 2020. *Id.* at 2 ¶ 6 (plea agreement). On July 9, 2022,[2] police recovered one of those firearms while executing a search warrant at the residence of I.H., an Unthank Park Hustler and associate of Mr. Green. *Id.* at 2 ¶ 6; PSR ¶ 20. Police have subsequently linked the firearm to the scenes of 17 shootings that occurred between June of 2021 and July of 2022—12 non-injury shootings, three injury shootings, and two homicides. ECF 109 at 2 at 2 ¶ 6; PSR ¶ 20. Police found shell casings from multiple firearms, not just the firearm that Mr. Green purchased, at every shooting scene except for one non-injury shooting, and the government's discovery and the PSR do not list the firearm that Mr. Green purchased as the murder weapon in the two homicides. *See*

---

[2] Both the plea agreement and the PSR state that police seized this firearm on July 9, 2021, but also go on to say that the firearm has been linked to shootings that occurred between June 2021 and July 2022, a date span that goes well beyond the listed recovery date. Rather, the firearm was likely seized on July 9, *2022*—a date after the linked shootings had occurred. Green 0001414. The incorrect date in the plea agreement and PSR was likely an oversight, as was defense counsel's failure to correct that notation.

Green 0001412-0001414 (describing the firearm as being "forensically linked"); PSR ¶ 20 (same). Mr. Green himself has not been linked to any of the shootings.

## II.   The recovery of firearms purchased by Mr. Green.

Mr. Green purchased 64 firearms between April 2020 and September 2021. ECF 109 at 2 ¶ 6; PSR ¶ 14. Police have recovered eleven of those firearms from other individuals, including the firearms associated with Counts 23 and 26. PSR ¶ 14.

Police seized some of the other firearms that Mr. Green purchased from Mr. Green himself. PSR ¶ 17 (describing two guns that were seized from a backpack that Mr. Green possessed); Green 0000001, 0000030 (describing the police's seizing one of the 64 firearms from Mr. Green on April 25, 2020). And they seized other firearms that Mr. Green purchased from his father's house. When the police discovered the guns Mr. Green's father also told them that the guns belonged to Mr. Green. When the police called him to verify, Mr. Green claimed ownership of the guns. Green 0000709-14 (describing police seizing three firearms purchased by Mr. Green from his father's residence). Mr. Green can also be seen brandishing firearms in music videos discovered during the government's investigation. Green 0001402-06.

When police arrested Mr. Green at his father's house on October 5, 2021, they did not locate any firearms, and Mr. Green stated that, if the remaining firearms he had purchased were not in his safe at his previous address, he did not know where they were. PSR ¶¶ 23-25.

### III. The plea agreement and presentence report.

Mr. Green entered a plea agreement with the government in which he agreed to plead guilty to Counts 23 and 26 of the indictment. ECF 109 ¶ 2, 4. Under the plea agreement, the parties agree that the base offense level under the advisory United States Sentencing Guidelines is 14 pursuant to U.S.S.G. § 2K2.1(a)(6). *Id.* at ¶ 8. The parties further agree to a 4-level increase for the trafficking of firearms under U.S.S.G. § 2K2.1(b)(5). *Id.*

The parties agree that an enhancement will apply under U.S.S.G. § 2K2.1(b)(1) because the offense involved three or more firearms but disagree as to the extent of that enhancement. *Id.* Under the agreement, the government will argue the offense involved between 25-99 firearms, resulting in a 6-level increase under U.S.S.G. § 2K2.1(b)(1)(C). The defense argues that the offense involved 8-24 firearms, resulting in a 4-level increase under U.S.S.G. § 2K2.1(b)(1)(B). *Id.*

The parties also agree to a 3-level reduction under U.S.S.G. § 3E1.1 based on Mr. Green's acceptance of responsibility and decision to resolve

his case. *Id.* That leaves the final offense level at either 19 or 21 in Zone D of the guidelines table, depending on the number of firearms involved under U.S.S.G. § 2K2.1(b)(1). Mr. Green's criminal history score is zero, establishing a criminal history category of I. PSR ¶ 45. The guideline range for an offense level 19 in criminal history category I is 30-37 months, and the range for offense level 21 is 37-46 months.

The government agrees to recommend a 37-month sentence followed by three years of supervised release—the low end of Mr. Green's guideline range if the offense level is 21. *Id.* at ¶ 9. And the plea agreement allows the defense to argue for a sentence below the advisory guideline range. *Id.* at ¶ 10.

Like the government, US Probation recommends a sentence of 37 months with three years of supervised release. Sentencing Recommendation at 1. The PSR tracks the plea agreement as to the base level offense, a four-level increase for trafficking, and a three-level reduction for acceptance of responsibility. PSR ¶¶ 31, 33, 39-40. As to the contested enhancement, US Probation calls for a six-level enhancement under U.S.S.G. § 2K2.1(b)(1)(C) because the offense involved over 25 firearms. It reasons that, "between April 2020 and September 2021, the defendant purchased 64 firearms.

Therefore, a six-level increase applies."[3] PSR ¶ 32. Accordingly, the PSR lists Mr. Green's total offense level as 21. PSR ¶ 41.

## ARGUMENT

The Sentencing Guidelines are advisory only, and but one factor among many to be considered in fashioning an appropriate sentence. *Kimbrough v. United States*, 552 U.S. 85, 90 (2007); *Gall v. United States*, 552 U.S. 38, 49–51 (2007); *United States v. Booker*, 543 U.S. 220, 245 (2005). A court's "overarching duty [is to] impose a sentence "sufficient, but not greater than necessary to comply with the sentencing purposes set forth in § 3553 (a)(2)." *Pepper v. United States*, 562 U.S. 476, 491, 131 S. Ct. 1229, 179 L.Ed.2d 196 (2011). In fashioning a sentence, the Court is to consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant, and (2) the need for the sentence imposed to

> to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; []to afford adequate deterrence to criminal conduct; []to protect the public from further crimes of the defendant; []and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

---

[3] Correspondingly, in justifying its sentencing recommendation, US Probation assumes that Mr. Green *falsely* stated that he was the actual buyer of *all* the firearms he purchased. Sentencing Recommendation at 2.

18 U.S.C. § 3553(a)(1), (2).   Beyond the above factors, the types of sentences available, and the sentencing guidelines, the court must also consider the need to avoid unwarranted sentence disparities.  18 U.S.C. § 3553(a)(3), (4), (5).

### I.     Only a four-level enhancement should apply under U.S.S.G. § 2K2.1(b)(1).

Beginning with the advisory guidelines, only a four-level enhancement should apply under U.S.S.G. § 2K2.1(b)(1), because the government has not shown that the "offense involved" over 25 firearms.  U.S.S.G. § 2K2.1(b)(1) calls for the offense level to be increased by four levels if the "offense involved" 8-24 firearms and six levels if it involved 25-99 firearms.  U.S.S.G. § 2K2.1(b)(1)(B), (C).  The commentary to that provision states that only *unlawfully* possessed, purchased, or distributed firearms should be counted towards the enhancement:

> "[f]or purposes of calculating the number of firearms under subsection (b)(1), count only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed, including any firearm that a defendant obtained or attempted to obtain by making a false statement to a licensed dealer."

USSG § 2K2.1 cmt. n.5.

*United States v. Vargem*, 747 F.3d 724 (9th Cir. 2014), illustrates the appropriate application of the enhancement and is instructive here.  In that

case, police found 28 firearms, including an unregistered machine gun, in the defendant's house after issuance of a restraining order that prohibited him from possessing guns. *Id.* at 726-27. The defendant was convicted of unlawful possession of a machine gun and unlawful possession of an unregistered firearm for his possession of the machine gun. *Id.* at 727. At sentencing, the district court applied a six-level enhancement under U.S.S.G. § 2K2.1(b)(1)(C), concluding that the offense involved 25-99 firearms because of the 28 firearms police found in the defendant's house, and defense counsel did not object to the enhancement. *Id.*

On appeal, the Ninth Circuit concluded that the district court plainly erred in imposing the enhancement. The court began by noting that the pertinent "offense" for purposes of § 2K2.1(b)(1) includes "all relevant conduct" as defined in U.S.S.G. § 1B1.3, which, in turn, includes uncharged offenses that fall within the same "course of conduct" or "common scheme or plan" as the offense of conviction. *Id.* at 730-31; *see also United States v. Parlor*, 2 F.4th 807, 812 (9th Cir.), *cert. den.*, 142 S. Ct. 623, 211 L. Ed. 2d 385 (2021) ("'When a court determines the number of firearms involved in an offense under U.S.S.G. § 2K2.1(b)(1), it looks to the relevant conduct section of the guidelines (U.S.S.G. § 1B1.3(a)(2)) to determine how many firearms come within the same course of conduct or perhaps a common

scheme or plan.'" (quoting *United States v. Santoro*, 159 F.3d 318, 321 (7th Cir. 1998))).

The court then explained that,

> [r]elevant conduct in firearms cases generally arises under one of two scenarios. The first is where the firearms are otherwise legal but the defendant, usually due to criminal history or prohibited status under federal law, is not able to legally possess them. *See, e.g.*, *United States v. Brummett*, 355 F.3d 343, 344–45 (5th Cir. 2003); *United States v. Powell*, 50 F.3d 94, 104 (1st Cir. 1995). The second is where the defendant is not a prohibited person per se, but the firearms he possessed were illegal for him, or anyone else, to own.

*Vargem*, 747 F.3d at 732. The case did not fit within the first scenario, as the defendant was not a prohibited person under federal law. The court therefore considered the second scenario, whether there was evidence to support the conclusion that each of the defendant's other 27 firearms were illegal. *Id.* at 732.

The court reasoned that the weapons discovered at the defendant's home were legally purchased, unmodified, and in some instances, still in their original packaging. *Id.* And that, "[w]hen those otherwise-lawful weapons were rendered suddenly unlawful by the [restraining order], there was no common scheme or plan to possess all 28 weapons unlawfully." Accordingly, the court concluded that the defendant's possession of the remaining firearms was not "relevant conduct" in relation to the defendant's

Defendant's Sentencing Memorandum                                                                 10

offenses, and therefore could not count towards the § 2K2.1(b)(1) enhancement. *Id.* at 730.

*Vargem* thus stands for the proposition that, in the absence of evidence showing that the defendant's purchase or possession of additional firearms was both unlawful *and* connected to the offense of conviction, the mere purchase or possession of additional firearms do not qualify as "relevant conduct" under U.S.S.G. § 2K2.1(b)(1). *Cf. Parlor*, 2 F.4th at 812 (holding that where a prohibited person possessed two firearms as of April 2018 and three more as of July 2018, those "repeated, substantially identical offenses" were sufficiently related to be considered part of the same course of conduct and justify an enhancement under U.S.S.G. § 2K2.1(b)(1)); *United States v. Lavin*, 124 F.3d 214 (9th Cir. 1997) (unpublished) (holding that the defendant's offense of conviction—making the false statement that he had not been convicted of a felony in order to purchase a firearm—was similar in character to his being a felon in possession of two other firearms where the three instances of illegal conduct occurred within a span of only three days, and, therefore, the district court did not err by increasing the defendant's base offense level by one point pursuant to U.S.S.G. § 2K2.1(b)).

Here, Mr. Green's offense conduct was making a false statement when purchasing two firearms for others rather than for himself. The defense concedes that this Court can find that the other approximately nine firearms that Mr. Green purchased and that were later recovered from other individuals were part of the same course of conduct as the purchases constituting Counts 23 and 26. That is, an inference is available that, because Mr. Green subsequently transferred those firearms to other individuals, he intended to purchase them for those other individuals, such that his statement that he was the actual transferee of the firearms was false. Further, such a finding is permissible because, through his agreement with the government, Mr. Green has admitted as much.

However, the government has not shown that over 14 of the remaining 64 firearms (enough to meet the 25-firearm threshold) that Mr. Green purchased were even transferred to others, let alone that Mr. Green intended to transfer them *at the moment* he purchased them. Indeed, some of those firearms were recovered from Mr. Green himself or his father's home, where Mr. Green claimed possession of them. And the government's own evidence shows Mr. Green handling other firearms. Mr. Green is not a prohibited person under federal law—in the absence of evidence that he

intended to transfer the firearms to others, the remaining purchases are lawful.

For similar reasons, the government cannot show that the remaining purchases were part of a continuous scheme or course of conduct as Counts 23 and 26. The "essential components" of a "common scheme or plan" are "similarity, regularity, and temporal proximity." *Vargem*, 747 F.3d at 731. There is no evidence beyond the mere absence of the firearms themselves that Mr. Green was purchasing the remaining firearms for others when he filled out the forms. Thus, the government has not established a similarity between the conduct. Further, Mr. Green's firearm purchases spanned approximately a year-and-a-half. Without affirmative evidence that some of the remaining firearm purchases were predicated on a false statement and thus unlawful this Court cannot evaluate if those purchases fell in close temporal proximity to August 13 and December 8, 2020—the date of the offenses.

In summary, the government has not shown that 25 or more of Mr. Green's firearm purchases were unlawful and sufficiently connected to the unlawful purchases composing Counts 23 and 26. Rather, the government's position and U.S. Probation's recommendation rest on speculation and propensity-based reasoning—that because Mr. Green made false statements

regarding being the actual transferee when purchasing *some* firearms, he must have done so for *all* the firearms he purchased over the course of a year-and-a-half.

In reality, the government's evidence supports application of a four-level increase under § 2K2.1(b)(1) commensurate with the less than 25 firearms that Mr. Green purchased and were later recovered from other individuals. Accordingly, this Court should conclude that Mr. Green's final offense level is 19, not 21, with a guideline range of 30-37 months.

## II. Considering the correct guidelines calculation and Mr. Green's history and characteristics, a sentence of 21 months is sufficient but not greater than necessary to satisfy the statutory purposes of sentencing.

With Mr. Green's final offense level properly calculated as 19, and the advisory guidelines range as 30-37 months, the remaining 18 U.S.C. § 3553 factors, as examined in Mr. Green's accompanying confidential supplement to the PSR, show that a further variance to a sentence of 21 months is warranted. Such a sentence is sufficient but not greater than necessary to serve the purposes of sentencing.

## CONCLUSION

For reasons set forth above and in accompanying confidential supplement to the PSR, the appropriate sentence for Mr. Green is 21 months and three years of supervised release.

Respectfully Submitted: September 13, 2023.

/s/ *Mark J. Kimbrell*
Mark J. Kimbrell
Attorney for Edward Charles Green

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date below, I served the foregoing document on the following attorneys by **email**:

Leah Bolstad
Assistant U.S. Attorney
United States Courthouse
1000 SW Third Avenue, #600
Portland, OR 97204
Leah.Bolstad@usdoj.gov

Dated: September 13, 2023         /s/ *Mark Kimbrell*
                                  Mark Kimbrell
                                  Attorney for Edward Charles Green